UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARC G. BARBE                                    CIVIL ACTION

v.                                               NO. 18-14037

OCWEN LOAN SERVICING,
LLC and AMERICAN MODERN                          SECTION "F"
HOME INSURANCE COMPANY

ORDER AND REASONS

Before the Court are the defendants' Rule 12(b)(6) motions to dismiss the plaintiff's first amended complaint.  For the reasons that follow, the motions are GRANTED.

**Background**

This lawsuit concerns allegations that a mortgage servicing company and a homeowners' insurance carrier conspired to issue a force-placed insurance policy with inflated premiums and then failed to pursue and arbitrarily withheld policy proceeds.

Marc Barbe and his wife, Renada, are the mortgagors of a home located in Metairie, Louisiana.  Ocwen Loan Servicing, LLC services their mortgage.  The mortgage agreement requires the Barbes to insure their property against any hazards "for which Lender requires insurance;" it further provides that, if they fail to

maintain appropriate coverage, "Lender may obtain insurance coverage, at Lender's option and Borrower's expense."[1]

---

[1] The "Property Insurance" section of the mortgage agreement provides, in part:

> **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. . . .

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

> . . .

> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to

By letter dated December 31, 2015, Ocwen advised Mr. Barbe that it had not received proof of coverage, as required by the terms of the mortgage, and therefore had renewed a lender-placed policy at his expense. Ocwen explained that the policy's annual premium of $3,927 would be billed to Mr. Barbe's escrow account and that he could cancel the coverage at any time, and earn a corresponding refund of any unearned premium, by providing Ocwen with evidence of other acceptable coverage. Ocwen also strongly recommended that Barbe obtain his own policy and warned that the cost of the lender-placed coverage "may be much higher than the amount [he] would normally pay." Finally, Ocwen attached to that letter a copy of the policy it had obtained from American Modern Home Insurance Company, which named Ocwen as the "insured" and listed the Barbes as "borrowers."

On August 5, 2016, high velocity winds damaged the Barbes' roof and exterior elevations, which allowed water to infiltrate the interior of the home and damage the ceilings, walls, floors, and fixtures. The Barbes promptly notified American Modern and filed a claim under the policy. According to the Barbes, American Modern's adjusters provided grossly inadequate estimates and failed to fully and properly pay the property damage claim.

---

restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. . . .

On August 3, 2018, Marc Barbe and Renada Barbe sued American Modern Home Insurance Company and Ocwen Loan Servicing, LLC in Louisiana state court, alleging that American Modern breached the insurance contract and engaged in bad faith claims adjusting practices under Louisiana law, that Ocwen breached the mortgage agreement by overcharging plaintiffs for the insurance policy and failing to assist them in pursuing insurance proceeds, and that the defendants negligently coordinated their efforts to overcharge plaintiffs for the policy. After timely removing the lawsuit to this Court, the defendants moved to dismiss the plaintiffs' petition for failure to state a claim. The plaintiffs then filed an amended complaint on February 19, 2019, after which Renanda Barbe voluntarily dismissed her claims with prejudice.

In his first amended complaint, Mr. Barbe asserts that he is an "insured" under the American Modern policy, or at the very least, a third-party beneficiary of the policy. He then alleges that American Modern breached the insurance contract by failing to properly investigate and pay his claim and is also liable for bad faith statutory penalties under Louisiana law. With respect to Ocwen, Mr. Barbe alleges that his mortgage servicer breached the mortgage agreement by overcharging for the insurance policy and by failing to assist him in obtaining sufficient insurance proceeds to repair his property. Barbe also alleges that American Modern and Ocwen participated in a conspiracy, in which Ocwen would pass

along an inflated premium to the Barbes and receive "commissions and/or kickbacks" from American Modern; he asserts a claim of unjust enrichment against each defendant for the alleged unearned benefits they received at his expense.

The defendants now move to dismiss the plaintiff's first amended complaint for failure to state a claim upon which relief may be granted.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Stated differently, Rule 8 "does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03; see also Iqbal, 556 U.S. at 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations omitted).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, when reviewing a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated into the plaintiff's complaint by reference that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). The Court is also permitted to consider matters of public record and other matters subject to judicial notice without converting the motion into one for summary judgment. See United

<u>States ex rel. Willard v. Humana Health Plan of Texas Inc.</u>, 336 F.3d 375, 379 (5th Cir. 2003).

Here, the Barbes' mortgage agreement, the American Modern force-placed insurance policy, and Ocwen's December 31, 2015 letter notifying the Barbes that the force-placed policy would be renewed are all attached to the plaintiff's first amended complaint and are central to his claims for relief. Therefore, the Court may consider the content of these documents in deciding the defendants' motions to dismiss.

II.

*A.*

The Court first considers whether the plaintiff has stated a breach of contract claim against American Modern. Specifically, Barbe alleges that American Modern breached the force-placed insurance policy by failing to adequately investigate, adjust, and pay his claim.

"To state a claim under an insurance policy, the plaintiff must be a named insured, an additional named insured, or an intended third-party beneficiary of the policy." <u>Guthrie Brown v. Am. Modern Home Ins. Co.</u>, No. 16-16289, 2017 U.S. Dist. LEXIS 80057, at *10-11 (E.D. La. May 25, 2017) (Lemmon, J.) (citing <u>Williams v. Certain Underwriters of Lloyd's of London</u>, 398 F. App'x 44, 47 (5th Cir. 2010)). Although the plaintiff asserts that he is either an insured, or at the very least a third-party

beneficiary of the policy, he fails to allege facts to support either status.

The plaintiff first alleges that he is an insured under the policy "according to the express language provided therein," but he points to no language within the policy that identifies him as an insured or an additional named insured. To the extent he relies on the "Evidence of Insurance" certificate to support his purported insured status, another Section of this Court has expressly rejected that argument. See Riley v. Southwest Business Corp., No. 06-4884, 2008 WL 4286631, at *6-7 (E.D. La. Sept. 17, 2008). In Riley, Judge Vance held that an insurance certificate identical to the one at issue here did not constitute a binding contract between an insurance carrier and a borrower because it "clearly note[d] that [lender] is the 'insured' and that [plaintiff] is merely the 'borrower[,]'" and it "expressly refer[ed] the reader to the terms of the policy and disclaim[ed] any legal effect." Id.[2] Accordingly, the insurance certificate does not make Barbe a party to the American Modern insurance contract.

_____

[2] The "Evidence of Insurance" certificate issued in conjunction with the American Modern policy here lists Ocwen as the "insured" and merely lists plaintiff Marc Barbe as the "borrower." It also contains the identical disclaimer as that of the certificate in Riley:

> THIS COVERAGE IS SUBJECT TO THE TERMS, CONDITIONS, AND EXCLUSIONS OF THE MASTER POLICY. THIS EVIDENCE DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICY. IT IS ISSUED AS A MATTER OF INFORMATION ONLY.

The plaintiff's attempt to claim third-party beneficiary status fares no better. Under Louisiana law, a contract for the benefit of a third party is referred to as a stipulation *pour autrui*. See Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary, 939 So. 2d 1206, 1211 (La. 2006). The Louisiana Supreme Court has articulated three criteria for determining whether a contract stipulates a benefit for a third party: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." Id. at 1212. The state high court has emphasized that a "stipulation *pour autrui* is never presumed" and that "[t]he party claiming the benefit bears the burden of proof." Id.

Here, the American Modern policy states that Ocwen is the named insured, and it defines "you" and "your" as referring to Ocwen. The "Loss Payable" provision of the policy provides: "Loss, if any, shall be made payable to you as your interest appears." Paragraph AA(2), in turn, states: "If we pay you for any loss and do not pay the mortgagor . . . ." When read together, these provisions reveal that the policy contemplates payment of any

_____

. . . FOR A COMPLETE COPY OF THE MASTER POLICY, CONTACT YOUR LENDER.

benefits in excess of Ocwen's interest in the property to the Barbes.

Notably, in considering force-placed insurance policies nearly identical to the one at issue here, other Sections of this Court have held that a mortgagor whose claim does not exceed the value of the mortgagee's interest in the property does not qualify as a third-party beneficiary under the policy. See Guthrie Brown, 2017 U.S. Dist. LEXIS 80057, at *14-17; Lee v. Safeco Ins. Co. of Am., No. 08-1100, 2008 U.S. Dist. LEXIS 69817, *9-16 (E.D. La. July 2, 2008). In Lee v. Safeco Insurance Co. of America, another Section of this Court held that similar language in a force-placed policy "manifest[ed] a clear intent to benefit the borrower," that the benefit was "certain once a particular condition [wa]s satisfied: when the loss payment exceed[ed] the insured's interest in the property," and that such benefit was not "a mere incident of the contract." 2008 U.S. Dist. LEXIS 69817, *10-15. In the absence of any allegations to the contrary, the Lee Court assumed that any loss payment "could conceivably exceed [the mortgagee's] interest in the insured property" and therefore denied the insurance company's Rule 12(b)(6) motion to dismiss. Id. at *13-16.

More recently, in Guthrie Brown v. American Modern Home Insurance Co., another Section of this Court dismissed a breach of contract claim against American Modern, without prejudice, where

the mortgagors' complaint contained "no information regarding the amount of [the] insurance claim against American Modern or plaintiffs' mortgage balance." 2017 U.S. Dist. LEXIS 80057, at *14-16. Judge Lemmon reasoned:

> Without allegations demonstrating that the condition requiring American Modern to pay plaintiffs was triggered, i.e., that the amount of the loss exceeds the mortgage balance, plaintiffs' complaint does not sufficiently allege that there was a stipulation *pour autrui*, and plaintiffs have not stated a claim against American Modern for breaching the insurance contract.

Id. at *15-16. Ultimately, the Guthrie Brown plaintiffs' third-party beneficiary claim against American Modern was dismissed with prejudice when they failed to plead in their second amended complaint facts demonstrating that the value of their insurance claim exceeded their current mortgage balance. Guthrie Brown v. Am. Modern Home Ins. Co., No. 16-16289, 2017 U.S. Dist. LEXIS 116842, at *4-6 (E.D. La. July 26, 2017).

Like the plaintiffs in Guthrie Brown, Mr. Barbe fails to plead facts that, if proved, would demonstrate that the value of the damage to his home exceeds his current mortgage balance.[3] In the

---

[3] Although he pleads through his first amended complaint (and its attachments) that the policy provides up to $286,070 in coverage and that the mortgage granted the mortgagee only a $211,500 interest in the property, he pleads no facts concerning the *current balance* on the mortgage.

Even assuming that $211,500 represents plaintiff's current mortgage balance, Barbe has nonetheless pled that Ocwen's interest in the home exceeds the value of the property damage claim, which he alleges is approximately $158,389.81. Specifically, Barbe pleads that American Modern underestimated the loss at $19,198.56

12

absence of such allegations, Barbe fails to state a claim against American Modern for breach of the insurance policy. And because the plaintiff has not stated a breach of contract claim against American Modern, he likewise may not bring a claim for bad faith claims handling practices under La. R.S. §§ 22:1892 or 22:1973. See Guthrie Brown I, 2017 U.S. Dist. LEXIS 80057, at *16 n.2 (citing Bradley v. Allstate Ins. Co., 620 F.3d 509, 529 (5th Cir. 2010)).[4] However, as leave to amend shall be freely granted, the Court will allow Barbe one final opportunity to amend his complaint to allege facts demonstrating that the value of his insurance claim exceeds the current balance on his mortgage, if he can in good faith do so.

*B.*

The Court next considers whether the plaintiff has stated a breach of contract claim against Ocwen. Barbe alleges in his first

---

($11,895.48 (ACV) plus an additional $7,303.08 (ACV)) when "additional necessary repairs would cost in excess of $139,191.25."

[4] To the extent he attempts to assert a negligence claim against American Modern, such efforts likewise fail because he has not plausibly alleged that American Modern owes him any duty. See Jackson v. Ferrand, 658 So. 2d 691, 698 (La. App. 4 Cir. 1994) (Under Louisiana law, a negligence claim is governed by the duty-risk analysis, which requires the plaintiff to prove that: (1) "the defendant had a duty to conform his conduct to a specific standard; (2) "the defendant failed to conform his conduct to the appropriate standard;" (3) the "substandard conduct was a cause-in-fact of the plaintiff's injuries;" (4) the "substandard conduct was a legal cause of the plaintiff's injuries;" and (5) "actual damages.") (internal citations omitted).

amended complaint that Ocwen breached the mortgage agreement by overcharging for the insurance policy while receiving kickbacks from American Modern and by failing to assist him in pursuing his insurance claim.

To state a claim for breach of contract under Louisiana law, "a plaintiff must allege a breach of a specific provision of the contract." <u>Blackstone v. Chase Manhattan Mortgage Corp.</u>, 802 F. Supp. 2d 732, 738 (E.D. La. July 19, 2011). Because the allegations in Barbe's complaint do not identify any contractual promise that Ocwen breached, the Court finds that Barbe has failed to state a claim for breach of contract against Ocwen.

First, with respect to Barbe's claim that Ocwen overcharged him for insurance, nothing in the mortgage limits the amount that can be charged for hazard coverage. To the contrary, the mortgage agreement expressly provides:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard liability and might provide greater or lesser coverage than was previously in effect. **Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.**

Emphasis added. The explicit terms of the mortgage vest the lender with authority to obtain insurance (after the borrower has failed

14

to procure his own) that is substantially more expensive than what the borrower could have selected and that may or may not cover the borrower's interest in the property.

Insofar as Barbe claims that Ocwen breached the mortgage agreement by receiving "commissions and/or kickbacks" from its lender-placed insurance carrier, such efforts likewise fail. Because "[n]o language in the mortgage agreement splits [Ocwen's] loyalty between protecting its own property and obtaining an affordable [lender-placed policy] for the borrower," any payments it may have received from American Modern constitute a commission, rather than a kickback. See Woodside v. Pac. Union Financial, LLC, No. 17-12191, 2018 U.S. Dist. LEXIS 47200, at *10-12 (E.D. La. Mar. 22, 2018) (Feldman, J.) (citing Cohen v. Am. Sec. Ins. Co., 735 F.3d 601 (7th Cir. 2013)). Moreover, the mortgage agreement and the related notices do not prohibit Ocwen from receiving a commission from the insurer. See id. at *11.

Barbe next alleges that Ocwen breached the mortgage agreement by failing to pursue, or assist him in pursuing, sufficient insurance proceeds from American Modern to repair the property. With respect to the insurance claims process, the mortgage provides that "Borrower shall give prompt notice to the insurance carrier and Lender" of loss; however, it places no obligation on Ocwen to independently pursue or even assist the Barbes in pursuing insurance proceeds from the insurer. Moreover, the permissive

provision that allows Ocwen to "make proof of loss if not made promptly by Borrower" also does not impose upon Ocwen a duty to submit proof of loss or otherwise pursue a claim.  Rather, it vests Ocwen with the right to submit proof of loss to the insurer in the event the Barbes fail to do so.  Accordingly, the terms of the mortgage do not give rise to a duty on the part of Ocwen to pursue insurance proceeds from American Modern.

In the alternative, Barbe alleges that "Ocwen assumed the duty to pursue insurance proceeds."  However, he also admits in his complaint that Ocwen did not submit a claim to American Modern: "The Barbes, not Ocwen, initiated the claim with AMHIC, though Ocwen sought to participate in the claims process, and thus triggered Ocwen's duty to pursue AMHIC for necessary and proper insurance proceeds inuring to the benefit of the Property."  The bare factual allegation that "Ocwen sought to participate in the claims process," without more, does not support a finding that Ocwen assumed a duty to pursue insurance proceeds.

Because the plaintiff has not plausibly alleged that Ocwen owed a duty under the mortgage or otherwise assumed a duty to pursue insurance proceeds, he fails to state a claim against Ocwen for breach of the mortgage agreement or negligent failure to obtain sufficient payments.  See Obioha v. Proctor Fin. Ins. Co., Nos. 06-5364, 06-9231, 2007 U.S. Dist. LEXIS 73635, at *9-10 (E.D. La. Oct. 2, 2007) ("Plaintiff points to no provision of his mortgage

contract that gives rise to a duty to him regarding claims adjustment under the insurance contracts. Nor does he point to any facts that suggest that [the mortgagee] assumed a duty under tort law with respect to the adjustment of the insurance claims.").

Barbe adds that Ocwen breached the duty of good faith and fair dealing by intentionally and maliciously overcharging for insurance and by failing to procure sufficient proceeds under the policy. Having determined that Barbe has not plausibly alleged Ocwen's breach of the mortgage agreement, the Court likewise finds that he not alleged a breach of the obligation of good faith and fair dealing implicit in that contract. See Schaumburg v. State Farm Mut. Auto Ins. Co., 421 F. App'x 434, 439 (5th Cir. 2011) ("A breach of the duty of good faith and fair dealing requires a breach of a contract.").[5]

### III.

The Court next considers whether the plaintiff has stated a claim against American Modern or Ocwen for "civil conspiracy" or unjust enrichment. Both claims concern the defendants' purported participation in a scheme involving inflated insurance premiums and "kickbacks." Specifically, the plaintiff alleges in his first amended complaint:

---

[5] In addition, to the extent Barbe attempts to assert a negligence claim against Ocwen, such efforts fail because he has not plausibly alleged that Ocwen owes any duty to him. See Jackson, 658 So. 2d at 698.

- Upon information and belief, Ocwen was involved in a relationship with AMHIC such that AMHIC billed Ocwen an inflated amount for the force-placed Policy, and Ocwen passed along that inflated premium to the Barbes.

- Upon information and belief, and unknown to the Barbes, AMHIC provided Ocwen with unearned "kickbacks" by making direct payments to Ocwen, by providing Ocwen with a percentage of the premium charged to the Barbes, by subsidizing or discounting administrative services charged to Ocwen, by entering into captive reinsurance deals with Ocwen, and/or by other means.

- This relationship is evidenced by the Barbes' hyper-inflated premium under the Policy and allegations made against Ocwen by other persons/entities nationwide.

*A.*

Article 2324 of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." The Louisiana Supreme Court has explained that Article 2324 "does not by itself impose liability for a civil conspiracy," for "'[t]he actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part.'" Ross v. Conoco, Inc., 828 So. 2d 546, 552 (La. 2002) (quoting Butz v. Lynch, 710 So. 2d 1171, 1174 (La. App. 1 Cir. 1998)). In other words, a civil conspiracy is simply a means to impute liability for an underlying tort. See id. To establish the existence of a civil conspiracy, a plaintiff

must show that "an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiff's injury, and there was an agreement as to the intended outcome or result." Curole v. Delcambre, 224 So. 3d 1074, 1082 (La. 3 Cir. 2017).

The plaintiff's complaint is at best an attempt to cover all boilerplate assertions. Barbe also submits, in his opposition papers, that the defendants engaged in a "conspiracy to defraud borrowers" and that their conduct amounts to "negligence." As previously discussed, Barbe's attempt to assert a negligence claim fails because he has not plausibly alleged that either defendant owes him any duty with respect to the amount of insurance premiums. Accordingly, the viability of his conspiracy claim turns on whether he has plausibly alleged that: (1) Ocwen and American Modern agreed to commit fraud by charging inflated premiums; (2) they actually committed fraud; (3) he suffered injury as a result; and (4) they agreed to the intended outcome or result. See Curole, 224 So. 3d at 1082.

Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. Moreover, state law fraud claims, such as the one alleged by Barbe here, are subject to the heightened pleading requirement set forth in Federal

Rule of Civil Procedure 9(b).  Dorsey v. Portfolio Equities, Inc.,
540 F.3d 333, 338-39 (5th Cir. 2008).  Under Rule 9(b), "a party
must state with particularity the circumstances constituting
fraud."  Fed. R. Civ. Proc. 9(b).  The Fifth Circuit "'interprets
Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify
the statements contended to be fraudulent, identify the speaker,
state when and where the statements were made, and explain why the
statements were fraudulent.'"  Dorsey, 540 F.3d at 339 (quoting
Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 564-
65 (5th Cir. 2002)).

Case literature from another Section of this Court concerning
fraud-based RICO conspiracy claims against a mortgage servicer and
an insurer provides helpful guidance.  In Robinson v. Standard
Mortgage Corp., a mortgagor, like Mr. Barbe, alleged that the
mortgage servicer on her home colluded with an insurance company
"to manipulate the force-placed insurance market by artificially
inflating the amounts that borrowers pay for coverage."  191 F.
Supp. 3d 630, 634 (E.D. La. June 7, 2016).  The plaintiff further
alleged that the mortgage company would receive a "commission" or
"kickback" in exchange for the privilege of collecting inflated
premiums from borrowers.  Id.  In analyzing facts nearly identical
to those alleged in Mr. Barbe's complaint, the Robinson court
dismissed the plaintiff's federal law fraud claims, in light of
the "clear disclosures" in the mortgage company's letters and the

20

absence of allegations of an unlawful kickback arrangement. <u>Id.</u> at 641-43. The <u>Robinson</u> court reasoned:

> Standard Mortgage notified Robinson that failing to correct an insurance deficiency would result in the imposition of force-placed insurance; it accurately disclosed the amount that Robinson would be charged for force-placed insurance coverage; and it informed Robinson that she would probably be able to obtain less expensive coverage by purchasing her own insurance policy . . . . Simply put, "[t]he Court cannot see how letters that warn of an imminent bad deal and urge one to seek better, could possibly be calculated to deceive anyone." <u>Weinberger v. Mellon Mortgage Co.</u>, No. CIV.A. 98-2490, 1998 U.S. Dist. LEXIS 14084, 1998 WL 599192, at *5 (E.D. Pa. Sept. 10, 1998).
>
> Moreover, setting aside the disclosures in Standard Mortgage's letters, Robinson's "kickback" allegations are facially implausible. . . .
>
> Standard Mortgage was not subject to divided loyalties when it force-placed insurance on Robinson's property. The mortgage agreement makes clear that the insurance requirement exists to protect *the lender's* interest in the mortgaged property: "Borrower shall insure all improvements on the property . . . against any hazards, casualties, and contingencies, including fire, *for which Lender requires insurance*. This insurance shall be maintained in the amounts and for the periods *that Lender requires*." . . . Nothing in these terms requires the lender to purchase the cheapest insurance or the insurance that provides the most value for the borrower. Thus, Standard Mortgage did not act on Robinson's behalf when it force-placed insurance coverage; it acted to protect its *own interest* in the mortgaged property--an interest that Robinson threatened by breaching her own contractual duty to maintain insurance coverage . . . .

<u>Id.</u> at 641-42.

Although the <u>Robinson</u> court addressed allegations of a fraud-based conspiracy under the Racketeer Influenced and Corrupt Organizations Act, the Court finds its reasoning persuasive. Mr.

Barbe alleges that Ocwen and American Modern engaged in a scheme to defraud him by passing on inflated insurance premium prices, without disclosing that Ocwen would receive commissions, discounted services, and/or kickbacks from American Modern. But, like the Robinson plaintiff, he attaches documents to his complaint confirming that Ocwen warned him about the price of the premiums, urged him to obtain his own coverage, and explained that the force-placed coverage was "primarily for the benefit of the owner on [his] mortgage loan." Mr. Barbe fails to state a claim for fraud.

*B.*

In the alternative, Barbe asserts a claim of unjust enrichment against both defendants concerning their role in the purported insurance premium kickback scheme. He alleges that American Modern would charge him an inflated premium and then provide Ocwen with kickbacks and commissions to maintain the right to force place policies on other properties in which Ocwen has a security interest.

Louisiana Civil Code Article 2298 codifies Louisiana's doctrine of unjust enrichment as follows:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another

> remedy for the impoverishment or declares a contrary
> rule.

La. Civ. Code art. 2298.  Thus, to maintain a claim for unjust enrichment under Louisiana law, a plaintiff must show: (1) an enrichment, (2) an impoverishment, (3) "a connection between the enrichment and the resulting impoverishment," (4) "an absence of 'justification' or 'cause' for the enrichment and impoverishment," and (5) that there is "no other remedy at law available to plaintiff." <u>Laborde v. Dastugue</u>, 868 So. 2d 228, 234-35 (La. App. 4 Cir. 2004) (citations omitted).

Here, the defendants contend that the no-other-remedy-at-law element cannot be satisfied.  They submit that the availability of other remedies at law (here, a breach of contract claim against Ocwen) precludes a claim of unjust enrichment.  They also challenge Barbe's ability to satisfy the enrichment and impoverishment elements of his claim, contending that he received insurance coverage and policy proceeds in return for the insurance premiums he paid.

The Court agrees with the defendants that Louisiana law precludes Barbe's unjust enrichment claim.  "Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract." <u>Drs. Bethea, Moustoukas & Weaver, LLC v. St. Paul Guardian Ins. Co.</u>, 376 F.3d 399, 409 (5th Cir. 2004) (citing

Edwards v. Conforto, 636 So. 2d 901, 907 (La. 1993)); see also Miller v. Housing Auth. of New Orleans, 190 So. 2d 75, 81 (1966) ("Our Code makes it clear that the equitable doctrine of unjust enrichment can apply only where the parties have not contracted in regard to a matter."). Because the mortgage agreement is a valid contract defining Ocwen and Barbe's rights and duties concerning insurance coverage, Louisiana law bars Barbe's unjust enrichment claim.

The mortgage agreement required the Barbes to maintain insurance coverage on their property and permitted Ocwen to obtain insurance on the property in the event they failed to do so. The mortgage also warned about the potential high cost of force-placed coverage, explicitly stating that the cost might significantly exceed the cost of insurance that the Barbes could have obtained on their own. Mr. Barbe does not dispute that he failed to maintain insurance coverage as required by the mortgage or that Ocwen had the right to force place coverage on the property pursuant to the terms of their agreement. To the extent Barbe submits that the mortgage does not expressly address Ocwen's receipt of "kickbacks," the Court has already determined that such payments are properly characterized as "commissions," and that the mortgage does not prohibit Ocwen from receiving them. Because Ocwen acted within its contractual rights under the mortgage, Mr. Barbe fails

to state a claim upon which relief can be granted for unjust enrichment.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendants' motions to dismiss are GRANTED; the plaintiff's unjust enrichment claims are hereby dismissed WITH PREJUDICE, and his breach of contract and tort claims are dismissed WITHOUT PREJUDICE. The plaintiff is granted leave to file a second amended complaint within thirty days to remedy the pleading deficiencies identified in this Order and Reasons.[6]

New Orleans, Louisiana, May 22, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[6] Given that plaintiff now faces his second opportunity to plead valid causes of action, his failure to do so will justify dismissal with prejudice. See also 28 U.S.C. § 1927.